UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IAN D.[1],

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

23-CV-478 (JLS)

## DECISION AND ORDER

Plaintiff Ian D. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 4–1. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 5–1, 6. For the reasons below, the Court grants in part and denies in part Plaintiff's motion and denies the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI"), filed on February 9, 2021.[2] Tr. 215–21.[3] Plaintiff's application was initially denied, and he requested a hearing before an administrative law judge ("ALJ"). Tr. 131–33. Following the hearing, at which Plaintiff was represented by counsel, ALJ Paul Georger issued a decision finding that Plaintiff was not disabled. Tr. 23–34. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. Tr. 1–6; Dkt. 1.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs. *See* 20 C.F.R. § 416.920(a)(4).

[3] The filing at Dkt. 3 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 3 are hereby denoted "Tr. __."

2

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.920(b).

3

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 416.920(d). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his or her RFC, age, education, and work experience. 20 C.F.R. § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given his or her RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since filing his application on February 9, 2021. Tr. 21. The ALJ also found that Plaintiff suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, bipolar disorder, and borderline personality disorder. *Id.* The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] is able to perform simple, routine and repetitive tasks. He is able to perform simple work-related decisions. He is able to interact with supervisors occasionally. He is able to interact with coworkers occasionally. He is able to interact with the public occasionally. He is able to tolerate few changes in a routine work setting defined as occasional changes to the worksite and routine.

5

Tr. 23–24.

The ALJ found that Plaintiff had no past relevant work. Tr. 28. But the ALJ concluded that Plaintiff was not disabled because his age, education, work experience, and RFC allowed him to perform jobs existing in significant numbers in the national economy. *Id.* As such, according to the ALJ, Plaintiff had not been under a disability since his application date of February 9, 2021. *Id.* at 29.

## II. PLAINTIFF'S ARGUMENT

Plaintiff makes two arguments for judgment in his favor. Dkt 4–1, at 6–16. First, he argues that the ALJ failed to reconcile limitations from state agency review psychologist Dr. L. Haus, Psy.D. ("Dr. Haus"). *Id.* at 6–10. Next, he argues that the ALJ failed to provide valid reasons for rejecting nurse practitioner Jeanne Salada-Conroy's ("NP Salada-Conroy") opinion, warranting remand. *Id.* at 10–15.

## III. ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo*, 31 F.4th at 78. But the RFC need not correspond perfectly with "any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not erroneous. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

6

(remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### a. The ALJ was required to explain why he did not incorporate all of Dr. Haus' opined limitations.

Plaintiff argues that the ALJ failed to explain why he did not adopt the limitations in Dr. Haus' opinion regarding completing a normal workday or workweek, and his ability to work at a consistent pace without unreasonable breaks, despite finding Dr. Haus' opinion persuasive as a whole. Dkt. 4–1, at 8. Plaintiff asserts that the ALJ's RFC determination did not account for those limitations expressed by Dr. Haus. *Id.*

On August 5, 2021, Dr. Haus completed a disability determination explanation, and opined, among other things, that Plaintiff was moderately limited in (1) remembering locations and work-like procedures; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (5) sustaining an ordinary routine without special supervision; (6) working in coordination with or in proximity to others without being distracted by them; (7) making simple work-related decisions; (8) completing a normal workday and workweek without interruptions from

7

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 95–97.

In relation to Plaintiff's social interactions, Dr. Haus found that Plaintiff was moderately limited in his ability to (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 97–98. Lastly, Dr. Haus opined that Plaintiff was moderately limited in his ability to (1) respond appropriately to changes in the work setting; and (2) set realistic goals or make plans independently of others. *Id.* at 98–99.

Plaintiff asserts that despite the ALJ finding Dr. Haus' opinion generally persuasive, the ALJ's RFC determination did not account for his moderate limitations in Plaintiff's ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. 4–1, at 8, Tr. 99. Plaintiff further argues that this constitutes "harmful error because the vocational expert testified that employers would only tolerate 15% off task behavior, and no more than one absence per month." *Id.*

While certain moderate limitations can be consistent with an RFC that limits a claimant to unskilled work, *see e.g., Washburn v. Colvin,* 286 F. Supp.3d 561, 566 (W.D.N.Y. 2017), the ALJ must provide an explanation for how the assessed limitations affect the claimant's ability to perform that unskilled work, *Jimmie E. v.*

8

*Comm'r of Soc. Sec.*, 2021 WL 249337, at *5 (W.D.N.Y. Jun. 18, 2021). An ALJ's RFC finding need not incorporate every limitation contained in a medical opinion to which the ALJ gave weight. *Phoebe B. v. Comm'r of Soc. Sec.*, 2022 WL 4462228, at *7 (W.D.N.Y. Sep. 26, 2022) (collecting cases). But an ALJ should explain why he or she did not include limitations in the RFC finding. *Linda H. v. Comm'r of Soc. Sec.*, 2021 WL 2075437, at *3 (W.D.N.Y. May 24, 2021).

The ALJ found Dr. Haus' opinion "generally persuasive because it is based upon a thorough analysis of and is in general alignment with the claimant's treatment records." Tr. 27. The ALJ further noted that he "relied upon this evidence to find the claimant moderately limited in all broad functional areas" and "to limit [Plaintiff] to simple, routine, and repetitive tasks, make simple work-related decisions, occasionally interact with supervisors, coworkers, and the general public, and occasionally tolerate changes to the worksite and routine." *Id.* But the ALJ did not comment on the moderate limitations related to completing a normal workday or workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest periods. Tr. 80. The ALJ should have explained his failure to account for limitations expressed in an opinion that he found persuasive. *See Jimmie E.*, 2021 WL 249337, at *5. Because the ALJ did not explain his reasons for failing to adopt all of the moderate limitations expressed by Dr. Haus, it cannot be "presume[d] that the limitations in the RFC adequately address plaintiff's limitations in managing

9

his emotions and behavior." *Christopher F. v. Comm'r of Soc. Sec.*, 2022 WL 130764, at *4 (W.D.N.Y. Jan. 14, 2022).

Because the ALJ failed to provide an explanation for not incorporating the moderate limitations expressed by Dr. Haus in Plaintiff's ability to complete a normal workweek without psychologically-based symptoms or performing at a consistent pace without an unreasonable number of rest periods, remand is warranted.

### b. The ALJ mischaracterized NP Salada-Conroy's office notes.

Plaintiff asserts that the ALJ "inaccurate[ly]" concluded that NP Salada-Conroy's office notes routinely reflected no more than mild to moderate mental symptoms. Dkt. 4-1, at 11. Rather, Plaintiff argues NP Salada-Conroy "consistently noted Plaintiff to be in moderate distress, with anxiety and depression during treatment, as well as an impaired impulse control. *Id.* at 11–12.

"[W]hen evaluating the opinions of record, the ALJ may not ignore an entire line of evidence that is contrary to his findings." *Donald S. v. Comm'r of Soc. Sec.*, 2022 WL 1302131, at *4 (W.D.N.Y. May 2, 2022) (internal citations omitted). "While an ALJ is entitled to resolve conflicts in an evidentiary record, [he] cannot pick and choose evidence that supports a particular conclusion." *Trumpower v. Colvin*, 2015 WL 162991, at *17 (W.D.N.Y. Jan. 13, 2015); *see also Collins v. Colvin*, 2016 WL 5529424, at *3 (W.D.N.Y. Sep. 30, 2016) ("An ALJ may not 'cherry pick' from a medical opinion, i.e., he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source.").

10

The ALJ was not persuaded by NP Salada-Conroy's opinion for four reasons. Tr. 28. First, the ALJ asserted that NP Salada-Conroy's office notes "routinely reflected no more than mild to moderate mental symptoms, including mostly benign findings in mental status evaluations." *Id.* Next, the ALJ noted that he discounted this opinion "because the rate at which this provider scheduled appointments with the claimant does not support the extreme limitations reported." *Id.* Third, the ALJ opined that Plaintiff's "consistent non-compliance with the recommended medication regimen likely exacerbated his mental symptom severity." *Id.* Lastly, the ALJ noted that Plaintiff's "overuse of caffeine and his inappropriate use of other substances also likely exacerbated his mental symptoms severity." *Id.*

From Plaintiff's initial visit with NP Salada-Conroy, dated July 21, 2016, Plaintiff reported that he has been "depressed all [of] his life" and "does not feel there is a place here for him on earth." Tr. 525. At the visit dated August 30, 2016, NP Salada-Conroy noted that Plaintiff expressed "[f]eelings of anxiety, depression, frustration, and hopelessness." *Id.* at 530. On November 8, 2016, NP Salada-Conroy noted that Plaintiff "had [a] panic attack, stopped his mood stabilizer and SNRI, had suicid[al] thoughts, [and has been] better since [he] stopped [two months] ago." *Id.* at 531. Plaintiff's treatment notes from March 7, 2017, reflected that Plaintiff expressed fear of poisoning himself with any other long-term medications. *Id.* at 534. Notes from May 24, 2017 also document Plaintiff's fear of taking medications, but that he was "willing to CTN in therapy with current therapist." *Id.* at 539.

11

In August of 2017, it was noted that Plaintiff "refuses any SSRI, SNRI, or mood stabilization." *Id.* at 543. However, as of December 2017, it was noted that Plaintiff was prescribed Xanax. *Id.* at 545. No changes were noted in the treatment records from March 18, 2018, or July 17, 2018. *Id.* at 549–56. In October of 2018, NP Salada-Conroy reported that Plaintiff was stable and doing well. *Id.* at 557. No changes were noted during Plaintiff's office visit in April of 2019, but in September of 2019, Plaintiff reported that his "panic and anxiety [were] manageable" but that he "has depression for weeks at a time, then he is restless and [has] excitable mania." Tr. 565. During that September session, Plaintiff was prescribed lithium carbonate. *Id.* at 567. In October of 2019, it was reported that Plaintiff's lithium carbonate dosage was increased. *Id.* at 572. In December of 2019, NP Salada-Conroy noted that Plaintiff agreed to participate in electroconvulsive therapy and that his mood was "not even." *Id.* at 573.

In February of 2020, Plaintiff reported that his "life [was] miserable" and that he was anxious to begin the electroconvulsive therapy. *Id.* at 577. It was also noted that Plaintiff was prescribed ambien at night, and that he was to return to the office in one month, rather than the previous schedule of being seen every three months. *Id.* at 579–80.[4] In April of 2020, NP Salada-Conroy noted that Plaintiff was "not doing well, missed [four electroconvulsive therapy] treatments [because] of

---

[4] In December of 2019, Plaintiff was referred to BryLin Hospitals for electroconvulsive therapy ("ECT"). Tr. 303. Plaintiff underwent thirty-one ECT treatments from February 26, 2020, through June 2, 2020, but ultimately, after a discussion with NP Salada-Conroy, it was reported that Plaintiff "was not benefitting from ECT." *Id.* at 305–40.

12

insurance, . . . [has] some suicide[al] thoughts." *Id.* at 581. On June 2, 2020, NP Salada-Conroy noted that she suggested Plaintiff try ketamine, and that he "plateaued with [electroconvulsive therapy]." *Id.* at 585.

On July 2, 2020, NP Salada-Conroy reported that Plaintiff was "not the best lately, [his] memory [is] poor, didn't do ketamine [because] of [the] cost, [his] family threatened to have him admitted to Brylin, having panic attacks, refuses to take Xanax when he has Xanax, has crying spells every day, [and] thinks he would be better off dead." *Id.* at 589. These therapy notes also indicate that NP Salada-Conroy considered increasing the level of care that Plaintiff was receiving. Under the "intervention/plan" portion of NP Salada-Conroy's notes, she wrote that she referred Plaintiff to "Brylin or inpatient treatment, or long term treatment facility, also discussed partial hospitalization." *Id.* at 592.

On August 12, 2020, NP Salada-Conroy wrote that Plaintiff's "depression is manageable." *Id.* at 593. Office notes dated October 13, 2020, report that Plaintiff "[r]an out of his lithium and stopped for a week and spun out of control, went back on, therapist said he has narcissistic personality [disorder] and borderline personality, still has suicidal thoughts [one time] per day." *Id.* at 597. In November of 2020, NP Salada-Conroy noted that Plaintiff's dad called because he was more depressed than he had previously seen him. *Id.* at 601. In December of 2020, NP Salada-Conroy noted that Plaintiff was tired a lot, up and down a lot, and that his suicidal thoughts continued. *Id.* at 605. In March 2021, NP Salada-Conroy noted that Plaintiff was doing better, and got a tattoo on his face. *Id.* at 610.

NP Salada-Conroy's office note, dated June 24, 2021, reported that Plaintiff "branded his neck with [a] cross himself, [h]as daytime sleepiness, had a [motor vehicle accident], used cocaine to stay alert, now buying Adderall, no eye contact, [and] feels better when he feels pain." *Id.* at 630.[5] NP Salada-Conroy's office note, dated December 30, 2021, reported that Plaintiff's "depression is unbelievabl[y] deep, cutting wrists, hitting head and gives [him]self bruises on face, has been going on for a year." *Id.* at 652. NP Salada-Conroy's last office note, dated March 3, 2022, noted that Plaintiff was "about the same." *Id.* at 656.

NP Salada-Conroy's mental RFC questionnaire, dated May 3, 2022, is supported by six years of treatment notes spanning from July 21, 2016, through March 3, 2022. Tr. 525–659, 670–74. This Court agrees with Plaintiff's assertion that the ALJ "used improper factors to diminish the value of a medical expert opinion—from a specialist who treated Plaintiff for over five years." Dkt 4–1, at 12. "[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (internal citations omitted); *see also Amarante v. Comm'r of Soc. Sec.*, 2017 WL 4326014, at *10 (S.D.N.Y. Sep. 8, 2017) (remanding because the ALJ

---

[5] Plaintiff's hearing testimony is consistent with NP Salada-Conroy's office notes. Tr 38–70. During the hearing, Plaintiff reported that he "carved words into [his] wrist not even a week ago." *Id.* at 58. Plaintiff additionally reported that he feels like he is "not able to express emotions properly" which causes him to "carve things into [his] skin and burn things into [his] neck because" he "feel[s] like . . . otherwise people think [he is] making all this up." *Id.* at 65.

"improperly assume[d] the mantle of a medical expert").[6] In other words, "an ALJ may not substitute his own judgment for a competent medical opinion." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp.3d 252, 257 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). Moreover, "[n]either the Act nor the Commissioner's regulations or policy rulings require a claimant to obtain certain psychiatric treatment in order to be found disabled due to [his] mental impairment." *Harris v. Colvin*, 149 F. Supp.3d 435, 449 (W.D.N.Y. 2016). Lastly, "Courts have recognized that a failure to comply with treatment can be a direct result of bipolar disorder." *Jimmeson v. Berryhill*, 243 F. Supp.3d 384, 391 (W.D.N.Y. 2017) (noting that "the ALJ repeatedly drew negative inferences from plaintiff's struggles with treatment compliance, but did not distinctly consider whether such difficulties could be a manifestation of plaintiff's bipolar or impulse control disorders").

Contrary to the ALJ's assertion, NP Salada-Conroy's office treatment notes do not reflect "mostly benign findings in mental status evaluations" or "mild to moderate mental symptoms." Tr. 28. NP Salada-Conroy's office notes consistently report that Plaintiff displayed anxiety, depression, feeling helpless, hopeless, worthless, and angry. Tr. 525–656. NP Salada-Conroy's office treatment notes document Plaintiff's serious and continuous psychiatric symptoms and do support

---

[6] The Second Circuit's recent decision seems to suggest that the frequency in which a medication manager or psychiatrist examines a claimant should not detract from the value of their formal medical statements. *Rubin v. O'Malley*, No. 23-540, at 29–31 (2d Cir. 2024). In *Rubin*, the Court noted that, although the claimant's psychiatrist, Dr. Paul, "examined Rubin less frequently than her therapists, . . . Dr. Paul clearly drew upon Rubin's entire medical record at the clinic when making his formal medical statements." *Id.* at 30–31. The same can be deduced here.

15

the extreme limitations reported in her mental RFC questionnaire. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022) (the ALJ improperly relied on the record of limited improvement and treatment of noncompliance with treatment, and did not consider plaintiff's continuous reports of serious psychiatric symptoms even after years of treatment and steady increase in medication). Here, as Plaintiff's long-term medication manager, NP Salada-Conroy, relied on her treatment notes in preparing her formal mental RFC questionnaire.

Because the ALJ improperly discounted NP Salada-Conroy's opinion by misinterpreting the office notes supporting that opinion, the ALJ's rejection of this opinion is unsupported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's motion for judgment on the pleadings (Dkt. 4–1) and **DENIES** the Commissioner's cross-motion for judgment on the pleadings (Dkt. 5–1). The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  October 2, 2024
        Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE